# In the
# United States Court of Appeals
## for the Seventh Circuit

LANITA DOTSON

*Plaintiff-Appellant*

v.

JAMES FAULKNER, et al.,

*Defendants-Appellees*

Appeal from the United States District Court
For the Eastern District of Wisconsin, No. 2:20-cv-01767-BHL
The Honorable Brett H. Ludwig, Judge Presiding.

## REPLY BRIEF OF PLAINTIFF-APPELLANT LANITA DOTSON

Joseph W. Seifert
Seifert, Small & Associates, LLC
757 North Broadway Street
Suite 300
Milwaukee, Wisconsin 53202
(414) 273-9900

*Counsel for Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………..………ii

ARGUMENT……………………………………………………………………………..…1

I.     THE COURT SHOULD HAVE DETERMINED THAT FAULKNER WAS ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT WHEN WHILE ON DUTY HE REPEATEDLY SEXUALLY AND PHYSICALLY ASSAULTED THE PLAINTIFF……………………………………..………

     a.   Plaintiff did properly plead the scope of employment issue and thus is entitled to a ruling that Faulkner acted within the scope of his employment...................................1

     b.   In the alternative, the Court should allow for a factual determination of Faulkner's actions occurring within the scope of his employment………......................................2

     c.   The claims pled by Plaintiff require that "scope of employment" be considered……………………………………………………………………..5

II.    PLAINTIFF-APPELLANT'S EXPERT'S DECLARATION WAS IN COMPLIANCE WITH FEDERAL RULE 28 U.S.C. § 1746(2) AND SHOULD BE ACCEPTED AS STATED UNDER THE PENALTY OF PERJURY…………………………………………………………………..………6

III.   THE JUDGE ABUSED HIS DISCRETION WHEN DENYING A WELL-ARTICULATED AND SUPPORTED CALCULATION OF PRESENT VALUE ANALYSIS; TIME VALUE OF MONEY AND INFLATION FACTORS ARE NECESSARY COMPONENTS OF LONG-TERM PRESENT VALUE CALCULATION……………………………………………………………………10

     a.   Plaintiff-Appellant's present-day calculation was completed utilizing necessary factors for inflation…………………………………………………………………..11

     b.   Attorney Seifert complied with the Order of the Court; the Judge provided no direction or restrictions as to applying appropriate inflationary adjustments……………………………………………….…………13

     c.   While Attorney Seifert may not be an Expert per se, he Nonetheless Submitted an Admissible Present-day Valuation Adjusting for Inflation………………….………16

IV.   THE JUDGE'S UNFOUNDED SLANDEROUS ACCUSATIONS THAT ATTORNEY SEIFERT ATTEMPTED TO DECEIVE THE COURT AS WELL AS ACCUSATIONS THAT ATTORNEY SEIFERT FAILED HIS CLIENT ARE DAMAGING TO SEIFERT'S REPUTATION AND CAREER AND SHOULD HAVE BEEN STRICKEN FROM THE RECORD…………………………………………………..…………...18

CONCLUSION……………………………………………………………..………………22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

28 U.S.C. § 1746 ................................................................................................................. 6-12

ABA Rule 3.7(a) ........................................................................................................... 10, 13-15

Beatbox Music Pty v. Labrador Entm't, 2020 WL 6468447 1, 9 (C.D. Cal. 2020) .................. 11,12

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007) ....................... 2

Blondin v. Winner, 822 F.2d 969, 973-74 (10th Cir. 1987) ......................................................... 21

Bolte v. Home Ins. Co., 744 F.2d 572, 573 (7th Cir. 1984) ......................................................... 21

Cameron v. City of Milwaukee, 102 Wis.2d 448, 3017 N.W.2d 164 (1981) ............................... 4,5

Cella v. U.S., 825 F.Supp 1383 (N.D. In. 1991) ..................................................................... 11,14

Cortez v. Lobo (In re World Trade Ctr. Disaster Site Litig.), 722 F.3d 483, 488 (2nd. Cir. 2013) . 8

Cunningham v. Foresters Financial Services, Inc., 300 F.Supp.3d 1004, 1016 (N.D. Indiana,
     2018) ...................................................................................................................................... 2

Davis v. Murphy, 559 F.2d 1098 (7th Cir. 1977) ......................................................................... 4

Doca v. Marina Mercante Nicaraguense, S.A., 643 F.2d 30 (2nd Cir. 1980) ............................... 19

Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc., 722 F.2d 1319, 1323 (7th Cir.
     1983) ...................................................................................................................................... 4

Federal Rules of Evidence 703 .............................................................................................. 11,17

Graham v. Sauk Prairie Police Com'n, 915 F.2d 1085, 1093 (7th Cir. 1990) ............................ 3,4

In re Firstenergy Corp. Sec. Litig., 2023 WL 820917 ............................................................. 7,12

In re Gibrick, 562 B.R. 183, 189 (Bkr. N.D. Ill. 2017) ................................................................ 11

In re Williams, 156 F.3d 86, 92 (1st Cir. 1998) ..................................................................... 20,21

Jones v. City of Chicago, 610 F.Supp. 350, 354 (N.D. Ill. 1984) ................................................ 10

Jones v. Lincoln Elec. Co., 188 F.3d 709, 727 (7th Cir. 1999) ................................................... 16

Keller v. Schuster, 54 Wis.2d 738, 742-43, 196 N.W.2d 640 (1972) ............................................ 4

Kersting v. United States, 865 F. Supp. 669, 677 (D. Haw. 1994) ................................................. 7

Lopez v. Vanderwater, 620 F.2d 1229 (7th Cir. 1980) ................................................................. 3

Martin v. Milwaukee Cnty., 904 F.3d 544, 554 (7th Cir. 2018) ..................................................... 6

O'Shea v. Riverway Towing Co., 677 F.2d 1194 (7th Cir. 1982) ................................................ 14

Perez v. Guetschow, No. 23-CV-153-PP, 2023 WL 6444905, at *1 (E.D. Wis. Oct. 3, 2023) ....... 5

Pfeil v. Rogers, 757 F.2d 850, 858–59 (7th Cir. 1985) ........................................................... 12,13

Robinett v. City of Indianapolis, 894 F.3d 876, 881-82 (7th Cir. 2018) ........................................ 3

Roy v. Ivy, 53 F.4th 1338, 1347 (11th. Cir. 2022) ....................................................................... 7

SCR 20:3.7(a) ......................................................................................................................... 10,13

U.S. v. Horn, 29 F.3d 754, 769 (1st Cir. 1994) ........................................................................... 21

U.S. v. Johnston, 690 F.2d 638, 646 (7th Cir. 1982) ................................................................... 10

U.S. v. Locke, 759 F.3d 760, 763 (7th Cir. 2014) ....................................................................... 14

U.S. v. Morris, 714 F.2d 669, 671 (7th Cir. 1983) ................................................................... 10,16

<u>United States v. Bates</u>, 600 F.2d 505, 511 (5th Cir. 1979) ............................................................ 10

<u>United States v. Natale</u>, 719 F.3 719, 729-30 (7th Cir. 2013) ...................................................... 14

Wis. Stat. § 895.46 ............................................................................................................................ 5

Wis. Stat. § 895.46(1)(a) ................................................................................................................... 1

**COMES NOW IN REPLY TO DEFENDANT-APPELLEES' BRIEF,** Plaintiff, by her attorneys, Seifert & Associates LLC, by Attorneys Joseph W. Seifert and Scott A. Small, and as and for an appeal of the United States District Court for the Eastern District of Wisconsin's Decision and Order made April 16, 2024, allege and show to the Court the following:

ARGUMENT

**I. THE COURT SHOULD HAVE DETERMINED THAT FAULKNER WAS ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT WHEN WHILE ON DUTY HE REPEATEDLY SEXUALLY AND PHYSICALLY ASSAULTED THE PLAINTIFF.**

    **a. Plaintiff did properly plead the scope of employment issue and thus is entitled to a ruling that Faulkner acted within the scope of his employment.**

In order to indemnify the State of Wisconsin, or the political subdivision of the Department of Corrections, a jury or court must find "that the defendant was acting within the scope of employment." Wis. Stat. § 895.46(1)(a). Throughout the course of this litigation, Plaintiff Lanita Dotson has contended that Defendant James Faulkner did indeed act within the scope of his employment. See, Deposition of Lanita Dotson, Dkt. 69, Pg. 12-13 ("I was scraping paint off a door, and during my shift, Faulkner said like 'hey, you missed a spot on this door' so he basically said come to this other door, and I go to the other door, and he has his penis out.")

In contrast to the lower court's contention that the issue of scope of employment was never pled, Plaintiff indeed made allegations that Faulkner was acting within the scope of his employment. See, Second Amended Complaint, Dkt. 65-1, ¶¶ 58 ("That Defendant Faulkner's June 10th, 11th, 12th and 22nd 2019 sexual assaults and strangulation of the Plaintiff were committed while he was operating either in his individual capacity or alternatively in his professional capacity and in any event operating under the color or Wisconsin state law.")

This message was repeated later, when the Plaintiff filed a Motion to Stay the granting of a Default Judgment against Defendant Faulkner, so that the Plaintiff could argue the issue of scope of employment. See, Dkt. 99. At this point of the litigation, Faulkner was the only remaining defendant, meaning he was the only remaining recourse for Plaintiff to indemnify the State. During a December 18, 2023 hearing on the Motion for Default Judgment and Motion to Stay, Plaintiff argued that the Motion for Default should be stayed in order to allow Plaintiff time to argue the issue of whether Faulkner was acting within the scope of employment. "I do see in Paragraph 93 there is an allegation that [Faulkner] was operating either . . .in his individual or alternatively in his professional capacity and in any event operating under color of Wisconsin law. I don't know. So I'm not going to waste any more time on this. This motion doesn't make any sense to me. It is denied." (Dkt. 121, Pg. 13, ¶¶ 7-12).

In the very breath that the District Court recognizes that Plaintiff did plead claims against Faulker in this "professional capacity," the Court swiftly denied Plaintiff her request to have an evidentiary hearing on the issue. Simply put, the standard for pleading an agency relationship, such as the scope of employment, is whether or not the Plaintiff "generally alleged[d] his agency claim so as to provide each defendant notice of the claims against them." Cunningham v. Foresters Financial Services, Inc., 300 F.Supp.3d 1004, 1016 (N.D. Indiana, 2018).

Indeed, a Plaintiff is not required to plead specific legal theories, if the liberal pleading standards of the Federal Rules are satisfied. See, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.") Here, Plaintiff pled not only that Faulkner was acting in his professional capacity and under the color of law (which are not mutually exclusive), but she further pled many facts which show that Faulkner's heinous actions were subjectively pursuant

to his job duties and goals. See, Dkt. 69; See also, Brief in Chief of Appellant, Section II, Dkt. 17.

> **b. Appellee incorrectly dismisses "scope of employment" as incongruent with "color of law" when in fact, the two are exclusive and compatible.**

Appellee states within its response that "scope of employment" and "color of law" are legal concepts which are "distinct." See, Dkt. 20, Pg. 12. While it is true that both concepts have different definitions and requirements, being "distinct" does not mean that the concepts are "exclusive." While the "color of law" and "scope of employment" are "closely related," they are different concepts. Robinett v. City of Indianapolis, 894 F.3d 876, 881-82 (7th Cir. 2018); Lopez v. Vanderwater, 620 F.2d 1229 (7th Cir. 1980). Simply put, when a Plaintiff makes a 1983 claim, she *needs* to show that the perpetrator was acting under the color of law; however, that perpetrator could have also been acting within the "scope of employment," which is an issue of agency, not an element of the claim. Graham v. Sauk Prairie Police Com'n, 915 F.2d 1085, 1093 (7th Cir. 1990) ("while [Defendant] unquestionably acted under color of law when he shot Graham, this does not necessarily mean that it was proper to grant summary judgment regarding the scope of employment issue.") The concepts are not mutually exclusive, and an action of a defendant can be both under the color of law *and* within the scope of employment.

In Graham, the District Court (W.D. Wis) granted summary judgment in favor of the Plaintiff, the widow of a man shot and killed by a Village of Sauk City and Prairie du Sac (collectively the "Villages") policeman. Summary judgment was granted in favor of the Plaintiff's § 1983 claims against the defendants, as well as on indemnity, in favor of the Villages. *Id* at 1087-88. Like the case at hand, there was little question as to whether the perpetrator was acting under

the "color of law." The Seventh Circuit noted that "the issue of municipal liability is a determination that is heavily dependent on the facts." *Id.* at 1096.

Another case which sheds light onto the issue of scope of employment versus color of law is <u>Cameron v. City of Milwaukee</u>, 102 Wis.2d 448, 3017 N.W.2d 164 (1981). In <u>Cameron</u>, four City of Milwaukee Police officers, who had been successfully sued under § 1983 in the Eastern District of Wisconsin, subsequently filed a state claim of indemnity against the City of Milwaukee, their employer during the underlying set of facts which led to the suit. *Id.* at 451; <u>Davis v. Murphy</u>, 559 F.2d 1098 (7th Cir. 1977). In <u>Cameron</u>, the Supreme Court of Wisconsin found that it was improper to grant Summary Judgement under the Wisconsin indemnity statute requiring "scope of employment" when that issue was never litigated as a "material or essential [fact]." *Id.* at 456, citing <u>Keller v. Schuster</u>, 54 Wis.2d 738, 742-43, 196 N.W.2d 640 (1972).

In comparison to the case at hand, there are two interpretations of <u>Cameron</u> and <u>Graham</u> that are relevant. First, from <u>Graham</u>, it is apparent that the color of law and scope of employment are separate and should both be considered under a factual analysis when liability is in question. Second, from <u>Cameron</u>, it is apparent that the issue of "scope of employment" is not exhausted under the doctrine of *res judicata* when it was never litigated as a material fact.

Here, the Default Judgment granted against Faulkner establishes that "the well-pleaded allegations of [the] complaint relating to liability are taken as true." <u>Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.</u>, 722 F.2d 1319, 1323 (7th Cir. 1983). Taking the facts which Plaintiff pled in this matter as true, Faulker was acting in his professional capacity, and arguably, state indemnification should apply. However, because the issue of indemnification was never litigated at the District Court level, that issue remains unresolved, and the doctrine of *res judicata* does not apply.

Thus, the two options are (1) scope of employment was established through the Default Judgment against Faulkner, and the district Court improperly found that the State was not indemnified by virtue of the facts in the complaint. In this instance, this Court should modify the order of the District Court and include that indemnification was decided in favor of the Plaintiff or that a factual hearing must be scheduled to determine whether Faulkner acted within the scope of employment; or (2) the indemnity issue is one that has not been determined, but can be determined, similar to <u>Cameron</u>, in a separate hearing—in which case, this Court should still remand the issue of indemnification back to the District Court. In either scenario, the scope of employment issue has not been litigated, but must be.

### c. The claims pled by Plaintiff require that "scope of employment" be considered.

The Wisconsin state indemnification statute, Wis. Stat. § 895.46, states that, when an officer or employee of the state, acting within the scope of their employment, causes damages, the state will pay those damages. "In other words, if the plaintiff successfully sues a public official or employee, and a jury finds that defendant to have been acting within the scope of employment, § 895.46 provides for the state to pay the damages on behalf of that defendant." <u>Perez v. Guetschow</u>, No. 23-CV-153-PP, 2023 WL 6444905, at *1 (E.D. Wis. Oct. 3, 2023).[1]

In this case, Ms. Dotson pled that Defendant Faulkner caused her damage. Those claims, by default judgment, are taken as true. During the Hearing on damages, and in her deposition, Ms. Dotson testified that Faulkner had sexually assaulted her to punish her for poor workmanship and to ensure that she did her job better moving forward. Yet, Appellee states that whether Faulker was

---

[1] Copy attached.

acting within the scope of his employment is "irrelevant" to the claims which survived summary judgment. See, Appellee Response Brief, Pg. 13.

This notion that the scope of employment issue was irrelevant was incorrectly echoed by the District Court—leading Plaintiff with a default judgment against Faulkner. See, <u>Martin v. Milwaukee Cnty.</u>, 904 F.3d 544, 554 (7th Cir. 2018) ("Generally, scope of employment is a fact issue.") Being an issue of fact, then, the issue of scope of employment is incredibly relevant to each claim that is pleaded with the requisite facts to support indemnification. Without being given the chance to fully litigate the factual claims which would invoke state indemnification, Plaintiff was left with no option in terms of arguing the facts of scope of employment. The claims against the State Defendants were dismissed on summary judgment, and the claims against Faulkner were granted on Default, even after the Plaintiff attempted to withdraw the Motion for Default Judgment to argue the scope of employment issue in Summary Judgment.

In summary, and in contrast to the District Court's insistence that the State was not given due process to argue scope of employment (Trans. Hearing, 4/16/2024, Pg. 26, ¶¶ 21-23), it was actually Plaintiff who was denied the opportunity.

## II. PLAINTIFF-APPELLANT'S EXPERT'S DECLARATION WAS IN COMPLIANCE WITH FEDERAL RULE 28 U.S.C. § 1746(2) AND SHOULD BE ACCEPTED AS STATED UNDER THE PENALTY OF PERJURY.

Substantial compliance with the Rules does not require that language in an unsworn statement stating that assertions are true appear in any specific order. 28 U.S.C. § 1746 allows for an expert to give testimony that can be used in court without requiring that the expert swear before a court as to the truthfulness of their testimony. 28 U.S.C. § 1746. The Code further allows these "unsworn declarations" so long as the individual testifying substantially meets four

requirements while providing their testimony. The declarant must (1) date and sign the document, (2) state that the content of their declaration is true, (3) admit that they realize this testimony is being provided under penalty of perjury, and (4), the above three requirements must *substantially* be present in the document. Roy v. Ivy, 53 F.4th 1338, 1347 (11th. Cir. 2022). (emphasis added). Opposing counsel notes that courts have disagreed with the interpretation of 28 U.S.C. § 1746, yet, they entirely disregard this disagreement and emphasize only that the District Court, in this Case, interpreted the Statute narrowly so as to exclude the Declaration. Appellees rely solely on the statement that failing to require any kind of 'true and correct' language would effectively write that requirement out of the statute, rendering the statutory text merely 'surplusage'." In re Firstenergy Corp. Sec. Litig., 2023 WL 820917.  However, Appellees fail to present the more salient language provided by this case, which states that while the requirements of 28 U.S.C. § 1746 are mandated, "the wording of those requirements can be effectuated in multiple ways—so long as the requirements *are* expressed." Id.  In other words, each ingredient can be expressed in different ways, but the recipe for a sufficient declaration remains fixed and includes that a declarant expressly states that he or she is alleging the statement *to be true* "while acknowledging he or she risks the legal consequences of committing perjury." In re FirstEnergy Corp. Sec. Litig. The court does not require under 28 U.S.C. § 1746 that the declarant must recite the statements about perjury and truth in some formulaic way, rather it only requires that the individual capture the essence of the requirements of the Statute with respect to testimony. Id.

Similarly, as long as a statement contains the phrase "under penalty of perjury", and a statement attesting to truth, the requirements of 28 U.S.C. § 1746 are met. Kersting v. United States, 865 F. Supp. 669, 677 (D. Haw. 1994). The court in this case denied plaintiff's motion to

strike the defendants' unsworn declarations containing additional statements not required under 28 U.S.C. § 1746. Id. The court implied that as long as the unsworn declaration included the words "true" and "under penalty of perjury," as well as signature and a date, then the declaration will comply with the Statute. Id. The court did not require statements occur in a specific order or format, rather, they stated that as long as the statements were contained in the declaration, the statutory requirements were met. Id. at 677.

In the present Case, Dr. Layton-Tholl created a psychiatric plan supported by an accompanying statement as directed by the Court. A sworn statement and attestation of truth and correctness at to the Plan was needed for the Court to accept it when considering compensation. In that Statement, Dr. Layton-Tholl—subsequent to identifying herself and the fact that she was retained to by the Plaintiff to create the Plan—identifies the Plan as Doc. 1m and that it is a "true and correct copy of the Plan" created for that purpose. Dr. Layton-Tholl signed the Statement under the penalty of perjury as well as under the affirmation of being "signed and sworn" by her.

Finally, the court in Cortez v. Lobo stated that only when the language in an affidavit substantially departs from the requirements of 28 U.S.C. § 1746, can a court declare that the requirements have not been substantially met. Cortez v. Lobo (In re World Trade Ctr. Disaster Site Litig.), 722 F.3d 483, 488 (2nd. Cir. 2013). In Cortez, the statement in question used the words "subject to punishment" instead of "under penalty of perjury". Id. at 485. The court stated that this was a "substantial departure" from the requirements of 28 U.S.C. § 1746 and therefore, the declaration was inadmissible. Id. Notably, the court did not throw out the declaration because of the location of the statement, but rather because the language was substantially different from the language used in 28 U.S.C. § 1746. Id.

In the present case, the District Court took issue with the fact that Appellant's expert testified as to the truthfulness of her testimony and psychiatric statement at a later point in her affidavit. This decision by the District Court essentially rewrites the language of 28 U.S.C. § 1746. The District Court seems to require that any unsworn statement contain a formulaic statement that should be repeated at the beginning of any testimony, when the statute itself requires no such thing. Because the Court failed to articulate its' reasoning, claiming only that "Plaintiff's expert…did not substantially comply with the requirements for an unsworn declaration under 28 U.S.C. § 1746," it is impossible to ascertain what the Court determines is, or is not, proper compliance. See Court Minutes and Order Doc 115. In this Case the fact that Appellant's expert testified as to truthfulness later in her affidavit—subsequent to her acknowledgment that her testimony was being given under penalty of perjury—makes no difference to the effect of her words. Appellees' hyper-technical argument attempts to claim that only the referenced document is a "true and correct copy," and further that Appellant's expert was not testifying as to the truthfulness of her entire affidavit but was only testifying as to the document being referenced. Appellees overlook the fact that Appellant's expert was hired for the express purpose of creating that psychiatric care document, and further, her testimony was entirely in relation to the Document—of which she testified was a "true and correct copy." Finally, Appellee cannot argue that the language used by Appellant's expert substantially departs from the Statute, because Appellant's expert did not differ from the required language. Both the Court and Appellees are overlooking the purpose of 28 U.S.C. § 1746. They overlook the fact that Appellant's expert testimony was based *solely* on the Document for which she did indeed testify as to truth-fullness. Doc 105. Moreover, they are misconstruing the purpose of 28 U.S.C. § 1746, which was not designed to force experts to recite a magical incantation that transforms

their simple statements into words of perfect uniformity but rather to provide witnesses with an uncomplicated method to provide testimony under penalty of perjury. Because Appellant's expert substantially complied with the requirements of 28 U.S.C. § 1746 and testified (1) to the fact that she recognized her statements were made under penalty of perjury, (2) to the fact that her submission was true and correct, and (3) signed and dated the document, the Court improperly rejected Appellant's submission.


III.     **THE JUDGE ABUSED HIS DISCRETION WHEN DENYING A WELL-ARTICULATED AND SUPPORTED CALCULATION OF PRESENT-DAY VALUE; APPELLEES' COUNSEL MIS-CHARACTERIZES THE PROCEEDINGS.**

Advocate Witness Rule, is primarily meant to prohibit an attorney from appearing as both an advocate and witness in the same proceeding. Jones v. City of Chicago, 610 F.Supp. 350, 354 (N.D. Ill. 1984). A critical consideration of this rule is whether the attorney will be "a fully objective witness . . . or may be perceived by the trier of distorting the truth for the sake of his client." U.S. v. Morris, 714 F.2d 669, 671 (7th Cir. 1983). Critically, this rule "does not render an advocate incompetent as a witness, but merely vests the trial court with *discretion* to determine whether counsel may appear as a witness without withdrawing from the case." Id. (emphasis added); U.S. v. Johnston, 690 F.2d 638, 646 (7th Cir. 1982); States v. Nyman, 649 F.2d 208, 211 (4th Cir. 1980); United States v. Bates, 600 F.2d 505, 511 (5th Cir. 1979).[2]

Further this rule contains certain exceptions. See SCR 20:3.7(a); see ABA Rule 3.7(a). Wisconsin Supreme Court Rule 3.7 and ABA Rule 3.7 dictate that a lawyer cannot act as an advocate in a trial unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client. Regarding subsection three (3) in particular, "[c]ourts weigh the policies underlying the advocate-witness rule, and whether disqualification will promote those policies, against the harm disqualification might cause the

---

[2] This rule additionally "reflects a broad concern that the administration of justice not only be fair, but also appear fair." Morris, 714 F.2d at 671.

client by depriving him of his attorney of choice, removing the attorney most familiar with the case, increasing the client's costs, and delaying the litigation." In re Gibrick, 562 B.R. 183, 189 (Bkr. N.D. Ill. 2017).

Regarding expert witness, courts have significant discretion to determine the methods used to calculate present value and the impact of inflation. See Cella v. U.S., 825 F.Supp 1383 (N.D. In. 1991). Furthermore, Federal Rule of Evidence ("FRE") 703 dictates that if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."

### a. Appellant's present-day valuation as ordered by the Court is admissible evidence pursuant to 28 U.S.C. § 1746.

Notably, it was the District Court itself that ordered Appellant's Counsel to make the calculations as to present-day value of future medical costs. The Court gave Appellant's Counsel no guidance as to how to make these calculations and gave no indication that making these future calculations would raise any issue with 28 U.S.C. § 1746. The Order of the Court was simply that Counsel prepare a 'present-day value calculation.' Curiously, neither the District Court nor Appellee's Counsel make note of this fact.

As stated above, Appellants argue that the Declaration did "substantially" comply with the requirements of 28 U.S.C. § 1746, and that the truth of the Psychiatric Life Care Plan was properly attested to by the Expert. The present-day valuation ordered by the Court is nothing more than a mathematical re-calculation of that Plan using standard formulas.

Second, had the Court determined that Appellant's counsel's calculations truly ran afoul of 28 U.S.C. § 1746, the proper procedure would have been to order Appellant to revise the calculations, rather than to strike them as evidence. Beatbox Music Pty v. Labrador Entm't, 2020 WL 6468447 1, 9 (C.D. Cal. 2020). Courts have allowed for parties to "cure" the defects that result from improperly creating an unsworn declaration regarding expert testimony. Id. In

<u>Beatbox Music Pty v. Labrador Entm't</u>, the court held that the defendants would have the opportunity to amend their expert testimony so that it complies with the necessary requirements. <u>Id</u>. The court based their decision on the fact that striking the expert testimony would leave the defendant without any expert testimony on a particularly important issue in that case. <u>Id</u>. The court implied that the striking of the testimony would not be in the interest of justice. <u>Id</u>.

While it is notable that this case was concerned with the expert's testimony under FRCP 26, the principle has been applied more generally in other cases. Because the District Court gave absolutely no guidance to Appellant's Counsel when it ordered him to make the present-day valuation, and other courts have allowed for testimony to be amended when an expert's testimony has been improperly sworn, the District Court erred in striking the present value of Appellant's future medical costs.

Third, Appellee's argue that Appellant's citation to <u>Pfeil v. Rogers</u>, 757 F.2d 850, 858–59 (7th Cir. 1985) was improper because "[i]t said nothing about whether an unsworn document can comply with 28 U.S.C. § 1746 without stating that the statements therein are 'true and correct.' That is a substantive requirement, as the <u>In re FirstEnergy Corp. Securities Litigation</u> court observed." Dkt. 20, p. 19. Appellees miss the mark yet again. The essence of the Court's conclusion in <u>Pfeil</u> was to establish that for a declaration to substantially comply with 28 U.S.C. § 1746, as long as the phrases "under penalty of perjury" and some statement that the document is true are both included in the declaration, it makes no difference whether certain minor requirements are met. The court implied that no matter where those statements are included in the document, as long as they are present somewhere, then the declaration will be properly sworn under 28 U.S.C. § 1746. Appellant's experts' declaration had both statements present. Appellees argue that the fact the "truth" statement was included farther down in the document then the

"perjury" statement means that the declaration was improperly sworn. The simple fact that their argument is about context instead of its absence shows that this argument is exactly the type of non-substantive requirement to which the Court in <u>Pfeil</u> was referring.

Finally, Appellees takes issue with Appellant's Counsel's calculations of likely future medical costs on three grounds: (1) that the document indicating present value calculations of Appellant's future medical costs was improperly authenticated; (2) that Attorney Seifert's inclusion of inflation in said calculation amounted to evidence offered by Appellant's attorney as a witness; and (3) that Appellant's attorney does not qualify as an expert witness and thus his calculation is inadmissible. The arguments offered by Appellees is insufficient on each proffered ground and will be addressed individually.

> **b. The Advocate Witness Rule does not Preclude Appellant's Counsel's Calculation Submission as it was Uncontested by Appellee in the District Court and the Dismissal of Attorney Seifert would Incur a Substantial Hardship upon Appellant.**

Appellees argue that calculations of Appellant's future medical costs amounted to evidence offered by Appellant's Counsel and therefore inadmissible evidence per SCR 20:3.7. Appellees cite to the Advocate Witness Rule which states that a party's attorney cannot act both as an advocate and a witness in the same proceeding absent special circumstances. SCR 20:3.7(a); ABA Rule 3.7 (a); see <u>Jones</u>, 610 F.Supp. at 354. Appellees are correct in that there are three (3) applicable exceptions to SCR 20:3.7 and ABA Rule 3.7. However, Appellees falsely claim that "[n]one of the applicable exceptions appl[y] here." See Dkt. 20, p. 22.[3]

Regarding Subsection (1), Appellant's Counsel's present-day calculation remains materially uncontested. Appellee never contested Appellant's present-day calculation and cannot

---

[3] Appellant utilizes the language of ABA Rule 3.7. To note, both rules are substantially similar.

meaningfully contend that omitting an inflationary factor is proper. See <u>Cella v. U.S.</u>, 825 F.Supp 1383 (N.D. In. 1991); see also <u>O'Shea v. Riverway Towing Co.</u>, 677 F.2d 1194 (7th Cir. 1982).

It is quintessential to note that Appellees were present (in person, in the witness gallery) at the hearing in which the District Court addressed the present-day calculation. Appellees did not appear on the record, but merely observed the proceeding. Appellees had multiple opportunities to object and to contest Appellant's submissions but failed to do so. In fact, Appellees, while present at the Hearing on Appellant's Motion for Reconsideration, did not make any statements nor otherwise appear on the record. Having continually ignored the submissions of the Plan and present-day valuation as well as their respective hearings, Appellees have waived their right to contest the documents and cannot now argue before this Court that they were contested. Through their silence, Appellees tacitly and intentionally approved of the present-day calculation and cannot now supplement the record before this Court—essentially bringing new arguments required to have been made before the District Court. <u>U.S. v. Locke</u>, 759 F.3d 760, 763 (7th Cir. 2014) (when a party "intentionally relinquishes or abandons a known right, the issue has been waived and cannot be reviewed on appeal, not even for plain error."); see <u>United States v. Natale</u>, 719 F.3 719, 729-30 (7th Cir. 2013).

This fact alone is dispositive of whether the Rule applies. Appellees knowingly waived their right to object to the documents, but now try to make new arguments retroactively. Due to the submissions being uncontested by any party, the exception applies and Appellant's report and present-day analysis are not subject to the Advocate Witness Rule. ABA Rule 3.7(a)(1).

Moreover, disqualification of Appellant's Counsel would create a substantial hardship on the Appellant. Public policy considerations fall in favor of Appellant. First, Appellant is only represented by Seifert, Small & Associates LLC. Removing Counsel would leave her with no

other attorneys. The Appellant would likely be in a position where she would be unable to retain new representation (considering the procedural posture of this case).

Second, Appellant's Counsel is undeniably most familiar with this matter. Given this Case's posture, Appellant would be hard-pressed to find new representation as knowledgeable as her current attorneys, if she could find any attorneys at all.

Third, Appellant cannot speculate as to cost increase(s) she would incur if this Court disqualified Attorney Seifert. The cost Appellant would incur would most certainly be much higher. Costs associated with finding another attorney are impossible to quantify, but the fact remains that the costs would be substantial, both monetarily and temporally.

Fourth, forcing disqualification of Attorney Seifert would unduly delay litigation.

Appellee's argument that Attorney Seifert's supplemental inflation calculation violates the Advocate Witness Rule is demonstrably false and must be disregarded. This contention was already lawfully disposed of due to Appellee's intentional failure to object to the Court. Appellee had its chance to make this argument prior, and because of such, cannot now supplement the record to its own benefit. As it is uncontested on the Record, Attorney Seifert's calculation falls within the exception pursuant to ABA Rule 3.7(a)(1).

Even if this Court allows the Appellees to supplement the record, disqualifying Attorney Seifert would levy a substantial hardship upon Appellant pursuant to numerous public policy considerations which are controlling in this Circuit.

Lastly, it is Attorney Seifert's valuation that is really at issue, not the expert report itself. Attorney Seifert used government published resources in performing a standard mathematical equation. There is no semblance of subjectivity in this calculation, and its computation has been made transparent to the Appellees. Thus, there is no reason to believe that an assortment of

numbers would be used by Appellant's Counsel to distort the truth for the sake of his client. Morris, 714 F.2d at 671. Because the Judge ordered Attorney Seifert himself, without specifics, to complete the valuation, it would be a fair, just, and equitable use of this Court's discretion to admit Attorney Seifert's valuation.

### c. While Attorney Seifert may not be an Expert per se, he Nonetheless Submitted an Admissible Present-day Valuation Adjusting for Inflation.

Third, opposing counsel argues that the present-day valuations submitted would need to have been performed by an expert witness. There are several reasons why Appellee's argument fails. First and foremost, Appellees attempt to raise new arguments into this case's record, something it could have repeatedly done, but failed to do, in the District Court. See Section III.B. *Supra*.

Pursuant to FRE 103(a), a party must make a timely objection or motion to strike evidence before the lower court to preserve its right to address such on appeal. Jones v. Lincoln Elec. Co., 188 F.3d 709, 727 (7th Cir. 1999) (To preserve an issue for appeal, [FRE 103(a)] provides that "a party objecting to the admission of evidence must make a timely objection or motion to strike before the district court.") Failure to do so constitutes a waiver of such an argument on appeal. Id. This in and of itself bars Appellees from raising this argument and is dispositive of this issue in totality.

Next, even if this Court allows Appellees to supplement the record, Appellant was ordered by the lower court to submit the present-day valuation. Notably, the District Court did not specify as to how this calculation was to be produced, just that it be done within fourteen

days. See Dkt. 122, p. 5, 21-22. The District Court did not provide Attorney Seifert with any parameters, but merely ordered that he complete the calculation.[4]

Appellant's Counsel was then placed in a catch-22, where he would either submit the report as ordered (while not being an expert), or not submit the report at all. Were this Court to adopts Appellee's position, Appellant could not have produced a valid calculation. Either Appellant would produce a present-day valuation as ordered and have it denied because Counsel is not an "expert," or violate an order by not submitting a valuation and in the process harming his client. Reasonably, Appellant's Counsel filed the forty (40) year calculation appropriately adjusting for inflation using U.S. Government figures. Put simply, the Court ordered Appellant's Counsel himself to calculate present value, allowing no occasion to utilize an independent expert.[5]

The District Court used its discretion as to how this calculation should take place, and in doing so, ordered Appellant's Counsel to submit one without any further instructions as to how it should be calculated. In compliance with court-order, Counsel provided a calculation which was the product of governmentally published resources meant exactly for such purposes. These sources and facts contained therein are ones which experts would "reasonably rely on . . . in forming an opinion[,]" and thus need not be admissible to be admitted into evidence. FRE 703.

Notably, Attorney Seifert was not performing any of the actual calculations or foundational analysis himself. He was utilizing the work from government sources and applying it to the equations of Dr. Layton-Tholl. This is a minor subsection of the present-day valuation,

---

[4] The District Court incorrectly noted that it had ordered Attorney Seifert to "offer limited supplemental evidence[,]" rather it merely ordered him to complete the calculation without indicating how he must do it. See Dkt. 122, p. 5, 22. In doing so, the District Court left Appellant with minimal time to produce such, and thus, Counsel had prepared the ordered evidence as efficiently as possible.
[5] Notably, Appellee similarly did not object to Attorney Seifert producing this calculation, although they were aware of the Order. This is yet another example of Appellees waiving their rights to make this argument at the appellate stage.

not the entire calculation itself. Counsel, in editing a portion of otherwise admissible evidence in compliance with the Judge's Order, left no room for subjectivity and simply compiled expert numbers into a standard formula.

IV.     **THE JUDGE'S UNFOUNDED AND SLANDEROUS ACCUSATIONS THAT ATTORNEY SEIFERT ATTEMPTED TO DECEIVE THE COURT AS WELL AS ACCUSATIONS THAT ATTORNEY SEIFERT FAILED HIS CLIENT ARE UNFAIRLY DAMAGING TO SEIFERT'S REPUTATION AND CAREER AND SHOULD HAVE BEEN STRICKEN FROM THE RECORD.**

Appellees have chosen not to address the issue of the Judge's slanderous accusations against Attorney Seifert, except to state in a footnote that "Appellees take no position on that issue." While opposing counsel will often take adverse positions on *every* issue presented no matter how benign, certain matters transcend controversy and bid consensus, thereby making a contrary argument unfeasible. Simply put, Appellees took no position on this issue—but they should have. The matter of defaming an attorney affects not only Attorney Seifert but any attorney unfairly accused of attempting to deceive the court and providing substandard service to his client. (Appellee's Brief, Doc. 20, Page 3, Footnote 1).

Appellant requests that this Court strike from the Record the defamatory comments made by the lower court. Namely as they pertain to the Judge's unfounded accusations of Attorney Seifert acting unethically and/or attempting to deceive the Court in his good faith completion of a present-day valuation.

For reference, Appellant's Counsel had filed an expert report detailing what future medical costs would be for Plaintiff. (See Dkts. 105-1, 106, 106-1, and Psychiatric Life Care Plan Doc. 1m). However, this Report was deliberately created without the inclusion of an inflationary factor; a factor which is critical to ensuring that Plaintiff is afforded the proper and just compensation for over forty (40) years of estimated future medical costs. *Id.* The Report was

designed for the Appellant to provide inflation adjusted figures as needed when calculating compensatory damages.[6]  It is uncontested that inflation should be considered when estimating present-day value of future long-term damages. <u>Doca v. Marina Mercante Nicaraguense, S.A.</u>, 643 F.2d 30 (2nd Cir. 1980).

Attorney Seifert, recognizing that an inflationary factor had not been utilized in the Plan, had properly applied nationally recognized and industry standard formulas to calculate this omitted inflationary impact. (See Dkt. 17, pp. 27-30)[7]. Remarkably, Attorney Seifert was given no guidance or instruction by the lower court as to how this inflationary factor was to be included—or not included.  Attorney Seifert was simply ordered by the Judge to prepare and submit a present-day valuation of the long-term care costs of the Appellant.  No other instructions or limitations were given.  Absent such insight, Attorney Seifert utilized the most logical and ethical path by using nationally recognized standards for calculating present value adjusted for inflation. <u>Doca v. Marina Mercante Nicaraguense, S.A.</u>  Had Attorney Seifert failed to do so, he would have provided the Court with an inaccurate present-day analysis creating a grossly insufficient compensation award never anticipated by the Care Plan. Ostensibly, submitting such analysis could be viewed, and argued, as actually being in violation of the Judge's Order.

Upon Attorney Seifert's completion of the calculation, and appearing before the lower court, he was severely and grossly chastised. First, the lower court had ridiculed Attorney Seifert, stating that Attorney Seifert had "done little to help [his] client[,]" that he had, presumptively in

---

[6] The Report expressly implies that inflation adjusted figures should be implemented by stating twice in the Document: "Estimated costs do not adjust for inflation or increases in cost of care over time."

[7] This formula being $V = FV/(1+r)^3$. See *United States v. Broderson*, 67 F.3d 452, 457 (2nd Cir.1995) (explaining how to use a present value calculation to account for the time-value of money); see also *Maldonado v. Sinai Medical Group, Inc.*, 706 F.Supp.2d 882 (N.D. IL 2010).

bad faith, "took the opportunity to nearly double the Plaintiff's request for future medical costs[,]" and that he had done so" in the guise[8] of supplementing the record with a present value for" such costs. (See Dkt. 107, pp. 4-6). These statements, and similar others, essentially amount to the lower court accusing Attorney Seifert of making disingenuous arguments with the intent to deceive the court—a very serious ethical violation.

The lower court made these extreme accusations absent citation to any evidentiary support (beyond the calculation itself, which cannot prove intent) or applicable case law. This was not the intention of Attorney Seifert and such alleged actions never occurred based upon his sound, reasonable, and reliable explanations as to how he had included an inflationary factor into Plaintiff's future medical bills. Attorney Seifert was at all times transparent with the lower court, especially considering it had afforded him no guidance in how it preferred the inflationary factor be included.

Courts have the ability to strike language from judges which are offensive or slanderous of attorneys. In re Williams, 156 F.3d 86, 92 (1st Cir. 1998)[9]. The court in Williams reviewed whether the chastising of an attorney on the record is considered a constructive sanction, and thus, whether attorneys have the ability to remedy this language and strike it from the record. *Id.* at 92. The court concluded that a chastised attorney is not "remediless[,]" and that they may "request that offending commentary be expunged from the public record. *Id.*; See, e.g., Bolte v. Home Ins. Co., 744 F.2d 572, 573 (7th Cir. 1984). This is typically done by filing a writ of mandamus.

---

[8] Notably, Merriam Webster defines 'guise' as: "a display of emotion or behavior that is insincere or intended to deceive." P. 8.

[9] This case directly reviews whether a judge's defamatory comments are considered a *de facto* sanction and, in doing so, analyzes the prospective impact such comments may have on an attorney's reputation. "It is trite, but true, that a lawyer's professional reputation is his stock in trade, and blemishes may prove harmful in a myriad of ways." *Willaims*, 156 F.3d at 90.

Courts will consider striking certain defamatory language only in "those rare cases in which the issuance (or nonissuance) of an order presents a question anent the limits of judicial power, poses some special risk of irreparable harm to the appellant, and is palpably erroneous." Williams, 156 F.3d at 93; citing U.S. v. Horn, 29 F.3d 754, 769 (1st Cir. 1994); accord Blondin v. Winner, 822 F.2d 969, 973-74 (10th Cir. 1987).

In Appellee's Reply, they failed to address Appellant's argument for the slanderous language of the lower court to removed, tacitly agreeing with Appellant. Because of such, Appellant's argument is undisputed and should be considered by the Court. The language used by the lower court regarding Attorney Seifert's present-day valuation appears to be made with an intent to lower his estimation in the eyes of the public and his peers. As a public record, and searchable by any future adverse counsel, such statements can have permanent damaging effect. The aforementioned language is both offensive and slanderous to Attorney Seifert and his practice of law and could easily cause irreparable harm. While Appellant's Counsel has not filed a writ of mandamus, they are nonetheless requesting that this Court use its discretionary powers to overturn the Judge's decision against striking this public degradation of Attorney Seifert's reputation.

First, Appellant's request is certainly within the power of this Court to hear and determine. Second, the comments made by the lower court prejudice Appellant's claims, especially as it pertains to Appellant's calculation of her medical damages. Finally, the comments of the lower court are palpably erroneous considering its' own failure to otherwise instruct Attorney Seifert in regard to its' request that he provide a present-day valuation. Attorney Seifert, who was given no insight as to how the lower court wanted to receive this calculation, had provided in good faith an appropriate and fully transparent valuation.

At all times relevant, Attorney Seifert was acting as he believed necessary, appropriate *and* as ordered by the Judge. The Judge's unfounded accusations as to Attorney Seifert's alleged attempts to commit egregious ethical violations by deceiving the Court are irreparably damaging to Attorney Seifert's career and standing in the community. When weighed accordingly against the potential chilling effect of a Judge's immunity with respect to making untrue statements from the bench, the long-term effects of slandering an Attorney's reputation should be paramount.

## CONCLUSION

For the reasons stated herein, and for those to be heard at hearing, this Court should reverse the District Court.

Dated: March 31, 2025

SEIFERT, SMALL & ASSOCIATES LLC
Attorneys for the Appellant

Electronically signed by:

*/s/ Joseph W. Seifert*
Joseph W. Seifert, Bar No. 1073592

*/s/ Scott A. Small*
Scott A. Small, Bar No. 1116789

*Jude S. Witkowski*
Jude S. Witkowski, Bar No. 1125859

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32, because this document contains 6,984 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 12-point Times New Roman style font.

Dated: March 31, 2025

Electronically signed by:

*/s/ Joseph W. Seifert*
**Attorney for Plaintiff-Appellant**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2025, the Reply Brief of Appellant was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Appellate CM/ECF system.

Dated this 31st day of March, 2025

Electronically signed by:

*/s/ Joseph W. Seifert*
Attorney for Defendant-Appellant

# Perez v. Guetschow

United States District Court, E.D. Wisconsin. |     October 3, 2023 |     Slip Copy |     2023 WL 6444905

## Document Details

standard Citation:    Perez v. Guetschow, No. 23-CV-153-PP, 2023 WL 6444905 (E.D. Wis. Oct. 3, 2023)

All Citations:    Slip Copy, 2023 WL 6444905

## Search Details

Search Query:    Perez v. Guetschow, 2023 U.S. Dist. LEXIS 177804

Jurisdiction:    Wisconsin

## Delivery Details

Date:    March 31, 2025 at 5:26 PM

Delivered By:    Scott Small

Client ID:    DOTSON

Status Icons:    👓

## Outline

Attorneys and Law Firms (p.1)

**ORDER GRANTING DEFENDANT CITY OF KENOSHA'S UNOPPOSED MOTION TO DISMISS PLAINTIFFS' MONELL CLAIM AGAINST CITY OF KENOSHA AND OFFICIAL CAPACITY CLAIM AGAINST DEFENDANT SHAWN GUETSCHOW (DKT. NO. 12), DISMISSING CITY OF KENOSHA AND DENYING PLAINTIFFS' REQUEST FOR STATUS CONFERENCE AND AMENDMENT TO SCHEDULING ORDER (DKT. NO. 25)** (p.1)

All Citations (p.2)

2023 WL 6444905

Only the Westlaw citation is currently available.

United States District Court, E.D. Wisconsin.

Jerrel PEREZ and Jane Doe, Plaintiffs,

v.

Shawn GUETSCHOW, City of Kenosha and
Kenosha Unified School District, Defendants.

Case No. 23-cv-153-pp

|

Signed October 3, 2023

**Attorneys and Law Firms**

Frankie J. Wermerskirchen, Drew J. DeVinney, Martin Law
Office SC, Oak Creek, WI, for Plaintiffs.

Micaela Haggenjos, Samuel C. Hall, Jr., Steven C. McGaver,
Crivello Nichols & Hall SC, Milwaukee, WI, for Defendants
Shawn Guetschow, Kenosha Unified School District.

Colin J. Casper, Dustin T. Woehl, Kasdorf Lewis & Swietlik
SC, Milwaukee, WI, for Defendant City of Kenosha.

**ORDER GRANTING DEFENDANT CITY OF
KENOSHA'S UNOPPOSED MOTION TO DISMISS
PLAINTIFFS' MONELL CLAIM AGAINST CITY
OF KENOSHA AND OFFICIAL CAPACITY CLAIM
AGAINST DEFENDANT SHAWN GUETSCHOW
(DKT. NO. 12), DISMISSING CITY OF KENOSHA
AND DENYING PLAINTIFFS' REQUEST FOR
STATUS CONFERENCE AND AMENDMENT
TO SCHEDULING ORDER (DKT. NO. 25)**

PAMELA PEPPER, Chief United States District Judge

**\*1** Plaintiffs Jerrel Perez and his minor daughter, plaintiff
Jane Doe, bring this case against defendants City of Kenosha
Police Officer Shawn Guetschow, the City of Kenosha (the
City) and the Kenosha Unified School District. Dkt. No. 1.
The plaintiffs allege that Guetschow, while working for the
Kenosha Unified School District as a security guard at the
middle school which Doe attended, used excessive force to
subdue and arrest Doe when breaking up a fight between her
and another student. See id. at ¶¶46-50, 56-59, 66, 71, 72.

The plaintiffs claim in their first cause of action that
Guetschow's use of excessive force on Doe violated her
constitutional right to be free from unreasonable seizures.
See Dkt. No. 1 at ¶¶82-87. They seek to hold Guetschow
liable in his individual and official capacities. Id. at ¶6. In
their second cause of action they seek to hold the City of
Kenosha directly liable under Monell v. New York City Dep't
of Social Services, 436 U.S. 658 (1978) for Guetschow's use
of excessive force, arguing that the City of Kenosha Police
Department should have better trained Guetschow for his
employment with the Kenosha School District and should not
have allowed him to work for the District because he was
known to have a short temper. See id. at ¶¶88-92.

Defendant City of Kenosha moves to dismiss the complaint's
second cause of action—the only claim against it. Dkt. No.
12. It argues that the complaint fails to allege facts sufficient
to state a plausible Monell claim. Dkt. No. 13 at 6-16. The
City argues that "[t]he claim against Guetschow in his official
capacity should also be dismissed as it is merely another way
to present a claim against a municipality." Dkt. No. 13 at
16 (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)).
Though the City moves to dismiss the complaint's sole claim
against it, it does not ask to be dismissed from the case.

Rather than respond to the City's motion to dismiss, the
plaintiffs' attorneys filed a letter advising the court that "the
plaintiffs have elected not to oppose the City of Kenosha's
motion." Dkt. No. 18. They point out that the City did not
ask to be dismissed as a defendant and assert that, although
they agree to dismiss their sole claim against the City, the City
should nonetheless "remain a defendant in this case due to
the plaintiffs' allegation of its statutory duty to defend and
indemnify [defendant] Guetschow." Id. (citing Wis. Stat. §
895.46).

The court will grant the City's unopposed motion to dismiss
the plaintiffs' Monell claim and official capacity claim against
defendant Guetschow for use of excessive force. The court
will also dismiss the City from this lawsuit. Section 895.46
of the Wisconsin Statutes states that if a public officer or
employee, acting in his or her official capacity, is sued as an
individual, and the jury finds that the officer or employee was
acting within the scope of his or her employment, the state
(or the political subdivision which employees the officer or
employee) will pay the damages. Jackson v. Graves, No. 14-
cv-1206, 2015 WL 5577527, at \*4 (E.D. Wis. Sept. 22, 2015)
(citing Wis. Stat. § 895.46). In other words, if the plaintiff
successfully sues a public officer or employee, and a jury
finds that defendant to have been acting within the scope
of employment, § 895.46 provides for the state to pay the

damages on behalf of that defendant. Id. But § 895.46 does *not* allow a plaintiff such as the plaintiff here to sue the state for damages—it does not provide a private cause of action for indemnification against a municipality. Id. (citing Miller v. Mauston Sch. Dist., 222 Wis. 2d 540, 550 (Wis. Ct. App. 1998)); Carlson v. Pepin County, 167 Wis. 2d 345, 356 (Wis. Ct. App. 1992) ("[Section 895.46,] which provides indemnity by the state for judgments against public employees because of acts committed within the scope of their employment, does not permit a tort victim to sue the state directly"). With the dismissal of the Monell claim, the plaintiffs have no claims remaining against the City. Because the City need not remain a defendant merely because it someday may be required to indemnify defendant Guetschow, the court will dismiss the City as a defendant.

 **\*2**  The plaintiffs filed a letter requesting a status conference to amend the scheduling order. Dkt. No. 25. They indicate that the current scheduling order does not provide them sufficient time to conduct their remaining depositions. Id. They also indicate that the defendants do not object to amending the scheduling order. Id. Rather than hold a status conference to address this issue, the court asks the parties to try to agree on new deadlines for an amended scheduling order. If the parties can agree to new deadlines, they may file a stipulation by the deadline the court sets below and the court will enter an amended scheduling order adopting those deadlines.

The court **GRANTS** defendant City of Kenosha's motion to dismiss the plaintiffs' Monell claim against the City of Kenosha and official capacity claim against defendant Guetschow. Dkt. No. 12.

The court **ORDERS** that defendant City of Kenosha is **DISMISSED**.

The court **DENIES** the plaintiffs' letter request to schedule a status conference. Dkt. No. 25. The court **ORDERS** that the parties must try to agree on new deadlines without the court's input in time to file a stipulation by the end of the day on **October 20, 2023**. If the parties cannot agree on new deadlines, they may seek assistance from the court.

### All Citations

Slip Copy, 2023 WL 6444905

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW** © 2025 Thomson Reuters. No claim to original U.S. Government Works.  2